# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# Big Stone Gap Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:07cr00003-001 |
| YAYAH TALIB, et al., ) | **MEMORANDUM OPINION** |
| Defendants ) | |

This matter is before the court on the motion of the defendant Yayah Talib for entry of orders preventing prison authorities from interfering with his trial preparations, (Docket Item No. 112) ("the Motion"). By Order dated July 17, 2007, the Motion was referred to the undersigned magistrate judge for determination pursuant to Federal Rule of Criminal Procedure 59(a).

## I. Factual and Procedural Background

Talib is incarcerated at the United States Penitentiary in Lee County, Virginia, ("USP Lee"), in the Special Housing Unit, ("SHU"). Talib, along with others, has been charged in this district with conspiracy to possess with intent to distribute and distribution of heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) and conspiracy to provide and possess contraband (heroin) in prison, in violation of 18 U.S.C. §§ 1791(a) and 1791(b)(1), while being incarcerated at USP Lee. These charges are set for jury trial beginning on November 7, 2007.

By Order entered May 25, 2007, (Docket Item No. 58), the court granted

Talib's motion to waive his right to counsel and to proceed pro se in this matter. In the Motion, the defendant claims that USP Lee prison officials have been purposefully interfering with his attempts to defend himself. In particular, the Motion alleges that:

1. Prison officials routinely confiscate all writing instruments from Talib when he is permitted to use the prison's law library;
2. Prison officials routinely open, review and confiscate Talib's mailings to the court;
3. Prison officials routinely search through Talib's legal paperwork;
4. On or about June 26, 2007, prison officials confiscated the discovery materials provided by the Government for Talib's review; and
5. Prison officials routinely deny Talib access to the prison's law library.

Subsequent to the filing of the Motion, Talib has filed at least three other documents, which raise additional claims of interference by prison officials. (Docket Item Nos. 133, 143 and 148.) These additional claims include that:

1. Correctional Officers Crum, Lambert, Taylor and Robinson confiscated legal books and legal motions from Talib's cell on July 29, 2007;
2. The law library at USP Lee is inadequate;
3. USP Lee does not allow SHU inmates to receive copied cases from the law library; and
4. USP Lee officials are purposefully placing disruptive cellmates in Talib's cell in an effort to interfere with his defense.

An evidentiary hearing was held before the undersigned on August 16, 2007,

to address these claims. At this hearing, Talib appeared and conceded that, despite his earlier filings with the court, his complaint that prison officials had interfered with his right to defend himself was based on only the following incidents:

1. Prison officials had improperly confiscated and held an affidavit made by his co-defendant James Dawson for three days before returning it to Talib;
2. Prison officials had confiscated a Koran and a Black's Law Dictionary from his cell on or about July 29, 2007;
3. Prison officials had confiscated his discovery materials from his cell on or about June 26, 2007;
4. Prison officials had not provided him with copies of the Federal Rules of Criminal Procedure, 21 U.S.C. § 846, 18 U.S.C. § 371 and certain cases he had requested; and
5. Prison officials had looked through and searched through his legal materials.

In particular, Talib testified that, after he was allowed to represent himself, an envelope containing the discovery materials from his former counsel did not come directly to him, but, instead, went to his counselor. According to Talib, these discovery materials sat on his counselor's desk for a week while the counselor was away before the materials were turned over to Talib. Talib also testified that he has received several packets of materials from the United States Attorney's Office that have been opened when he received them. Talib said that he does not know whether any particular document had ever been removed from these packets, but that the

-3-

persons opening the packets could remove items without his knowledge or photocopy items without his knowledge.

Talib also testified that Officer Faust took his discovery materials from his cell on June 26, 2007, and that prison officials took two books – a religious book and a law dictionary – from his cell on July 29, 2007. Talib testified that Faust confiscated a mattress from his cell and that his discovery materials were inside this rolled up mattress. Talib also testified that he was in the law library on July 29, 2007, when his cellmate refused to return a food tray. He said that prison officials subsequently searched the cell and confiscated the books. Talib claimed that the law dictionary had two legal motions he had drafted inside, which he requested be returned to him. Talib said that these motions were never returned to him.

Talib admitted that the prison officials' actions had not prevented him from filing any motions which he had wished to file in his case. Talib further admitted that, since Captain Wilson had arrived at USP Lee in June 2007, he had been given access to the law library every time that he had requested access. Talib could not provide the court with any specific dates prior to Captain Wilson's arrival at USP Lee on which he had requested and been denied access to the law library. Talib also testified that Captain Wilson had allowed him to make telephone calls during the day to his standby counsel. Talib stated that he had not requested that his standby counsel provide him with a copy of the Federal Rules of Criminal Procedure. He did state, however, that he had requested other materials, which his standby counsel had provided to him.

Talib said that he had requested that the education staff at USP Lee assist in his

defense by providing him with copies of cases from the internet. He testified that those requests had been denied.

Thomas Pulver, a correctional counselor at USP Lee, testified that, perhaps as early as March 2007, Talib had given him a piece of paper and asked him to make copies of it. Pulver stated that Talib insisted that he read the document. Based on his review, Pulver said that the document appeared to be an affidavit sworn to by James Dawson before Alicia Hall, another counselor at USP Lee. Pulver testified that because USP Lee inmates are not allowed to transfer property, including documents, to each other, he turned the document over to the USP Lee Special Investigations Services Department, ("SIS"), to investigate how Talib had obtained the document from Dawson. Pulver testified that he notified Talib that he had turned the document over to SIS. Pulver testified that two days later, SIS returned the document to Hall, who, in turn, returned the document to Pulver, who, in turn, returned the document and the requested copies to Talib.

USP Lee Inmate Russell Marks testified that on June 26, 2007, Talib came back to his cell after using the law library. Marks testified that Talib's cell was beside his cell at the time and that Talib sent Marks several documents, which appeared to be discovery materials, from his cell by using a string going from under one cell door to under the other cell door. Marks stated that Talib told him that he intended to mess up his cell and claim that prison officials had taken the discovery materials he had passed to Marks. Marks stated that he held the materials for approximately one month and then passed them on to Kenneth Gregory, another USP Lee inmate who was assisting Talib with his case. Marks testified that he had witnessed prison officials

confiscate a hardback Koran from Talib's cell on one occasion.

On rebuttal, Talib stated that he passed his discovery materials to Marks only after they had been returned to him by an "orderly" named "Chuck" who was working in the SHU. Talib testified that after his discovery materials were taken by Faust, they were returned to him a couple of days later by Chuck, who said he found them in the trash. Talib further testified that a correctional officer who he could not name passed his discovery materials to Marks for him, and that he did not send them by string under Marks's cell door.

USP Lee Inmate James Thomas Williams testified that he witnessed Correctional Officer Crum coming from Talib's cell on July 29, 2007, with two books, one of which had Talib's name written on it, and a bunch of papers. Williams testified that officials would often search Talib's cell when he would leave the cell to go to the law library or to recreation. Williams testified that the SHU law library was a very small room, which, from May until August 13, 2007, contained only some military code books and a typewriter. Williams testified that only one or two inmates were allowed to use the law library at a time, and that the inmates must fill out a request form to be granted time to use the library.

USP Lee Captain David Ross Wilson testified that he was called to come to Talib's cell in the SHU on June 26, 2007. Wilson testified that he had just started work at USP Lee earlier that week. He stated that Talib was upset about a cell search and was refusing to give up his restraints. Wilson stated that when he arrived at Talib's cell it was not in "utter disarray" as Talib claimed, but that there were three or

four manila envelopes on the floor. Wilson testified that the officers who had conducted the search had told him that they had confiscated an altered mattress from the cell.

Wilson testified that he had attempted to help Talib in the preparation of his defense as much as he could. Wilson testified that Talib had requested an inmate assistant and that he had allowed another inmate, Kenneth Gregory, to work with Talib. He stated that he had allowed Talib to make extra telephone calls and had allowed help with his typing. Wilson also testified that the SHU law library contained a metal desk, typewriter and four to five bookcases full of books. Wilson stated that the library did not contain a chair because one had previously been used to barricade the library door and had been used as a weapon. Wilson stated that when it was brought to his attention that the law library had only one electrical outlet, he obtained a power strip and compact disc player so that Talib could use the compact disc player and typewriter at the same time.

Wilson stated that Talib had been given reasonable access to the law library. Wilson testified that since he had come to USP Lee, he had not denied Talib access to the library. Wilson stated that when an inmate wished to use the library, he would complete and turn in a "cop-out" form. Wilson stated that the inmates requesting library time were allocated time in the order that their forms were received. In fact, he stated that Talib had more access to the library than other SHU inmates. Wilson stated that a log of all such requests was kept. Wilson stated that a review of this log showed that Talib had requested and been allowed to use the law library 29 times since March 30, 2007. On some dates, Wilson said, Talib was allowed to use the law

library twice in the same day. While inmates are, in general, unable to use the law library when USP Lee is on lockdown status, Wilson testified that he had allowed Talib to use the law library during a recent lockdown.

Wilson stated that Talib had two hardback books confiscated from his cell on July 29, 2007. Wilson stated that inmates were not allowed to possess hardback books. The two books taken from Talib's cell were a copy of the Koran, which was placed with Talib's personal property, and a law dictionary, which belonged to the prison law library.

Through Wilson's testimony, the government admitted an inventory of the legal materials contained in the SHU law library. (Government's Exhibit No. 6.) Wilson testified that the inventory showed the legal materials contained in the library as of June 2007. Wilson also testified that Government's Exhibit No. 6 contained the invoices for several legal materials requested by Talib and specifically purchased by USP Lee and provided to Talib.

Inmate Benjamin Potts testified that, in early June 2007, the only law books in the library were Title 5, Title 21 and Title 46 of the United States Code and some military books. Potts stated that in early June 2007 he was left in restraints in the SHU law library while Talib was brought to use the library. Potts stated that when he was taken to the SHU law library on this occasion there was a mattress on the floor and it smelled of feces and urine. Potts also stated that he had used the law library on August 14, 2007, and he still found it inadequate, but that it did contain some materials that Talib had requested. Potts also testified, that despite a Bureau of Prisons policy

-8-

requiring all legal mail to be opened in the inmate's presence, he, too, had received opened legal mail.

Correctional Officer Jeff Faust testified that he conducted a routine search of Talib's cell on June 26, 2007. Faust stated that he confiscated an altered mattress and that there were no papers inside the mattress. In fact, Faust testified that he never saw Talib's discovery materials.

Correctional Officer Ryan Smith testified that prison officials routinely searched inmates going to and from the law library looking for weapons and contraband. Smith stated that SHU inmates are allowed to use only a certain prison-issued pen. Smith stated that he had, on one occasion, confiscated the hard shell of a nonprison-issued pen from Talib, but had allowed him to retain the flimsy inside ink cartridge.

Jacqueline Pitt, a USP Lee teacher, testified that part of her duties included providing the inmates with requested legal materials. Pitts stated that Talib had requested and been provided with a copy of the Federal Rules of Criminal Procedure.

Officer William Crum testified that he had confiscated two hardback books from Talib's cell. One was a copy of the Koran. The other was Black's Law Dictionary, which belonged in the prison's law library. Crum stated that, although Talib complained that there had been legal paperwork inside the books, there were no documents in the books when he took them. He said the law dictionary was eventually returned to the law library where it belonged. Crum stated that the

correctional officers had been instructed to allow Talib to use the law library any time it was available.

Brian Kilgore, an SIS support technician, testified that he allowed Dawson's affidavit to be returned to Talib after he had reviewed it. Kilgore also stated that SHU inmates are restricted to 15 minutes of phone calls a month on a monitored telephone system. Kilgore testified that Talib's privileges to use the monitored telephone system had been suspended pending the outcome of this criminal case. Kilgore stated, however, that Talib had been allowed to make calls to his attorney on an unmonitored confidential telephone system.

*II. Analysis*

While the Sixth Amendment to the United States Constitution guarantees a criminal defendant "the Assistance of Counsel for his defence," U.S. CONST. amend. VI, the Supreme Court in *Faretta v. California*, 422 U.S. 806 (1975), held that it also guarantees an implied inverse right of self-representation. In particular, the Court in *Faretta* held that the Sixth Amendment protected a "personal" "right to defend" oneself. 422 U.S. at 819, 834. The Court has not, however, fully defined what that personal right to defend entails. Although, the Court did recognize that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." 422 U.S. at 835. Such certainly is the case when, as with Talib, the defendant is in custody pending his trial.

In *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the Supreme Court held that "the

-10-

fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The *Bounds* case, however, involved prison inmates who had filed "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights." 430 U.S. at 827. The *Bounds* case did not involve inmates who were attempting to defend themselves against criminal charges and who, therefore, were entitled to counsel.

In fact, the Fourth Circuit has specifically held that *Bounds* has no direct application to the case of a criminal defendant, who "had an absolute right to counsel, which he validly waived." *United States v. Chatman*, 584 F.2d 1358, 1360 (4th Cir. 1978). "...[T]o the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined." *Chatman*, 584 F.2d at 1360. Furthermore, in a recent per curiam opinion, the Supreme Court has specifically rejected the argument that its holding in *Faretta* required access to an adequate law library for incarcerated pro se criminal defendants. *See Kane v. Garcia Espitia*, 546 U.S. 9 (2005). "[I]t is clear that *Faretta* says nothing about any specific legal aid that the State owes a *pro se* criminal defendant." *Kane*, 546 U.S. at 10.

That being the case, it appears that the Sixth Amendment right to defend oneself does not include the right to access an adequate law library to do so, when, as is the case here, the defendant has chosen to waive his right to counsel. I further find, however, that, even if Talib were constitutionally entitled to access to an adequate law

-11-

library, the evidence before the court does not prove that such access has been denied him. By Talib's own admission he has been granted access to the law library on every occasion he has requested since Captain Wilson came to USP Lee in late June 2007. Regarding the contested evidence as to the contents of the SHU law library, I find the government's evidence, including the inventory sheets and invoices for specific items purchased for Talib's use, persuasive. In particular, I find that Talib has been provided with access to the Federal Rules of Criminal Procedure and Titles 18 and 21 as requested. I further note that Talib conceded that his standby counsel has provided him with every item he has requested from him.

I further find that a number of the allegations raised by Talib in his Motion are not supported by the evidence or are simply not true. In particular, I find persuasive Marks's testimony that Talib secretly transferred his discovery materials to him to hold so that he could falsely claim that these materials had been confiscated by the prison staff. I note, however, that even if these material had been confiscated by the prison staff, Talib admits that they were returned to him two days later and have been in his possession since that time. I further find that the evidence presented did not support Talib's allegations that prison officials routinely confiscated all writing instruments from him, that prison officials routinely opened, reviewed and confiscated Talib's mailings to the court and that prison officials purposely placed disruptive cellmates in Talib's cell to interfere with his trial preparation.

With regard to Talib's remaining allegations, it appears in each instance that the prison's actions were reasonable under the circumstances and, further, that Talib has not suffered any true interference with his ability to defend himself. For instance, the

uncontradicted evidence shows that Talib's legal materials were routinely searched as he entered and left the SHU law library. Prison officials, however, have presented testimony that such searches are necessary to prevent the transfer of contraband or the possession and transfer of weapons among inmates. Talib, on the other hand, has presented no evidence that his defense has been prejudiced in any way by such searches. Prison officials further explained that the Black's Law Dictionary found in Talib's cell was taken for two reasons: 1) Inmates are not allowed to possess hardback books in the SHU; and 2) The book belonged in the SHU law library so that it could be accessed by all inmates. Insofar as Talib claims that the dictionary contained two legal motions which were never returned to him, I note that he was unable to identify the content of those motions, whether the substance of those motions had been subsequently filed with the court or how he was prejudiced by their not being filed with the court. Prison officials also explained that Dawson's affidavit was temporarily taken from Talib's possession while it was determined whether his possession of the affidavit violated prison regulations with regard to possession of another inmate's property. The uncontradicted evidence shows, however, that the affidavit, and the requested copies, were subsequently returned to Talib. That being the case, I cannot find that Talib's defense has been prejudiced by any of the these actions.

In summary, despite Talib's arguments to the contrary, I find that the evidence before the court does not demonstrate a concerted purposeful effort on the part of USP Lee officials to interfere with Talib's right to defend himself against his pending criminal charges. To the contrary, the evidence before the court demonstrates that these officials, in particular Captain Wilson, have attempted to assist Talib in many ways, including allowing him additional telephone privileges and specifically

-13-

procuring certain requested legal materials. It appears that Talib is simply experiencing many of the difficulties that this court warned him that he might experience trying to defend himself while incarcerated. Therefore, I will deny Talib's Motion.

*III. Conclusion*

Based on the above-stated reasons, the Motion will be denied.

An appropriate order will be entered.

ENTER: September 26, 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-14-