# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 2:07CR00003-001 |
| v.  ) | **OPINION AND ORDER** |
| ) | |
| **YAYAH TALIB,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant.  ) | |

*Whitney D. Pierce, Assistant United States Attorney, Abingdon, Virginia, for United States; Andrea Harris, Assistant Federal Public Defender, Charlottesville, Virginia, for Defendant.*[1]

The defendant, assisted by counsel, has filed a third motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[2]  For the reasons that follow, I

---

[1] The court also knowledges the able assistance to the defendant of law student Benjamin Stievater and the Federal Sentence Reduction Clinic at the University of Virginia School of Law.

[2] In Talib's first motion for compassionate release, filed pro se, the risk of COVID-19 was the ground for relief.  The motion was denied, the court finding that he had not presented any extraordinary and compelling reason and noting his "extensive and serious criminal history" and that he "has committed numerous disciplinary infractions and crimes while incarcerated."  Order 1, Aug. 5, 2020, ECF No. 522.  In his second pro se motion he again relied on the risk of serious medical consequences from COVID-19, and the court again denied relief.  Op. & Order, Oct. 8, 2021, ECF No. 534, *aff'd*, No. 21-7719 (4th Cir. May 24, 2022).

find that relief should not be granted. It is therefore **ORDERED** that the motion, ECF No. 538, and supplemental motion, ECF No. 554, are DENIED.

A jury found Talib, a federal inmate, guilty of conspiring to distribute or possess with the intent to distribute heroin (Count One of the Superseding Indictment), in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and conspiring to commit an offense against the United States by providing or possessing contraband (heroin) in a prison (Count Two), in violation of 18 U.S.C. § 371. On March 3, 2008, I sentenced Talib to a total term of 262 months imprisonment, consisting of 240 months on Count One, to be followed by a partially consecutive term of 60 months on Count Two. His convictions and sentence were affirmed on appeal. *United States v. Talib*, 347 F. App'x 934 (4th Cir. 2009) (unpublished). Talib, now 54 years old, has a projected release date of June 27, 2032.[3]

The governing statute provides that a sentence may be reduced if "after considering the factors set forth in section 3553(a) to the extent that they are applicable" when "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Although I may not reduce a defendant's sentence pursuant to a non-retroactive change in sentencing law, the Fourth Circuit held

---

[3] Talib was sentenced in 2000 to 180 months imprisonment by the United States District Court for the Middle District of Pennsylvania after a conviction for carjacking. The sentence imposed by this court was directed to run consecutively to that sentence. J. 2, Mar. 5, 2008, ECF No. 370.

in *United States v. McCoy*, 981 F.3d 271, 284, 286 (4th Cir. 2020), that when deciding a compassionate release motion, a district court may consider the disparity in inmates' sentences due to "changes in sentencing law" as well as "such factors as the defendants' relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served." *Id.* at 287, 288.

When sentenced by this court in 2008, Talib was found to be a Career Offender and accordingly was subjected to a guideline range of 210 to 262 months. His Career Offender status was based on the determination that his instant crime was a controlled substance offenses and that he had at least two prior predicate offenses. Presentence Investigation Report (PSR) ¶ 41, ECF No. 377. The defendant asserts that based on *United States v. Norman,* 935 F.3d 232 (4th Cir. 2019), a 21 U.S.C. § 846 drug conspiracy is not a controlled substance offense within the meaning of the Career Offender guideline as defined in USSG § 4B1.2(b) because it is broader than the "generic, contemporary meaning" of conspiracy in that it does not require an overt act. 935 F.3d at 237–38 (citation omitted).[4] It is further argued that the predicate offenses used to determine Talib's status as a Career Offender — burglary,

---

[4] The government does not contend that Talib's conviction of conspiracy under 18 U.S.C. § 371 to commit a crime against the United States, namely, to provide and process contraband (heroin) in prison, is a predicate offense, although an argument can be made that it is since it requires proof of an overt act.

unlawful delivery of a non-controlled substance, and escape — would not now be held to be so.⁵ Thus, it is argued that if sentenced today, Talib could not have been designated as a Career Offender and his guideline range would have been 57 to 71 months, a difference between his original range at the high end of 191 months and "an extraordinary and compelling reason to reduce Mr. Talib's sentence." Mot. Reduce 7, ECF No. 554.⁶

---

⁵ The defendant concedes that a fourth conviction used as a predicate — carjacking — remains valid. Mot. Reduce 7, ECF No. 554. Effective in 2016, the guidelines were amended to remove "burglary of a dwelling" as a Career Offender predicate, although adding as a ground of upward departure where "a burglary involves violence." USSG amend. 798, supp. app. C (2021). It is not apparent that the burglary committed by Talib involved violence, although the only description we have of it is that he "kicked in a door at the home of Angela Clark and took [items]." PSR ¶ 46. In regard to the state escape conviction, PSR ¶ 60, following Talib's sentencing the Fourth Circuit ruled in *United States v. Clay*, 627 F.3d 959, 969 (4th Cir. 2010), that a "walk-away escape" was not a crime of violence under the Career Offender guideline. Finally, as to the use of the predicate state conviction of delivery of a non-controlled substance, PSR ¶ 58, the defendant contends that a state crime involving imitation substances, as in Talib's conviction, should not be considered as a "controlled substance offense" under the guidelines, citing my decision prior to Talib's sentencing in *United States v. Gardner,* 534 F. Supp. 2d 655 (W.D. Va. 2008) (holding that a Virginia imitation controlled substance conviction was not a predicate "felony drug offense" within the meaning of the former 18 U.S.C. § 841(b)(1)(A), and thus could not be used to enhance a sentence under that statute). As the government points out, the court of appeals rejected this contention on Talib's direct appeal. *Talib*, 347 F. App'x at 941 n.7.

⁶ Other courts of appeal have differed on the issue of whether a change in law can constitute an extraordinary and compelling reason for sentence reduction under § 3582(c)(1)(A)(i). *Compare United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021) (holding that the nonretroactive changes to the 18 U.S.C. § 924(c) mandatory minimums "cannot be a basis for compassionate release" because "Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced"); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) ("We take the opportunity here to answer squarely and definitively whether the change to § 924(c) can constitute an extraordinary and compelling reason for a sentencing

- 4 -

It is also argued that the continued existence of COVID-19 in prison, even though Talib is now vaccinated, is a sufficient compelling reason for his release and that the sentencing factors contained in 18 U.S.C. § 3553(a) support that release.

In response, the government opposes any reduction in sentence. The government asserts that regardless of any intervening change in sentencing law, there is no compelling disparity here because the serious nature of Talib's conduct in this case, as well as his lengthy criminal history and prison disciplinary record, would justify the same sentence today. While the government agrees that Talib's medical records reveal that he has hypertension, an enlarged prostate, and only one kidney, the government points out that Talib contracted COVID-19 in October 2020, experienced a brief and apparently mild illness, and has fully recovered. The record contains no evidence that he suffered any complications from the disease, and he has now been vaccinated.

I agree with the government. Even assuming that the changes in sentencing law would disqualify Talib as a Career Criminal if he were sentenced today, I do not

---

reduction. It cannot."), *cert. denied*, 142 S. Ct. 1363 (2022); *United States v. Jarvis,* 999 F.3d 442, 444 (6th Cir. 2021) ("If every defendant who received a longer sentence than the one he would receive today became eligible for compassionate release, the balance Congress struck would come to naught."), *cert. denied*, 142 S. Ct. 760 (2022), *with United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022) (holding that district court may consider changes in sentencing law as part of the "'extraordinary and compelling' calculus"); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) (holding that a "combination of such a sentence and a defendant's unique circumstances" can justify a sentence reduction). Of course, I am bound to follow the Fourth Circuit's precedent established in *McCoy*.

believe the disparity to be a compelling and extraordinary reason under his particular facts.  Moreover, I do not find his health concerns sufficient for his release.  Finally, considering the appropriate factors set forth in 18 U.S.C. § 3553(a), and in particular the nature and circumstances of the offenses, Talib's history and characteristics, and the need to afford adequate deterrence and protect the public, I find that reduction of Talib's sentence is not justified.

Talib has a persistent history of criminal conduct from age 16 to age 31, when on July 4, 1999, he committed the carjacking that resulted in his first long prison sentence.  In that crime, he "approached the victim, fired a shot into the air, demanded the victim's money, and pointed the gun in the victim's face, and took the victim's vehicle and fled the scene."  PSR ¶ 62.  While in prison thereafter, he continued his criminal behavior.  He developed a drug distribution scheme in which he persuaded various women, including his sister and his aunt, to assist in delivering contraband to him and other inmates during visiting time at the United States Penitentiary Lee.  In 2005, he began writing to Catherine Flading, a woman in Buffalo, New York, and manipulated her into a romantic relationship.  She began assisting Talib in his distribution conspiracy, visiting him frequently, sometimes with other women, to surreptitiously deliver tobacco, marijuana, and heroin, all arranged by Talib.  She would receive payment from unknown persons on the outside and deposit it into the prison accounts of Talib and his cellmate.  Eventually,

Talib paid her several thousand dollars to move from Buffalo to Kingsport, Tennessee, near the prison, and to support her there, so that she could visit the prison every weekend. Trial Tr. 32, 35, ECF No. 353. She also served as an outside mail drop for Talib, so that he could communicate though her with others, including other inmates, without the knowledge of prison authorities. *Id.* at 37–38. She was finally arrested at the post office in July of 2006, while picking up a package containing heroin that Talib had arranged for her to receive in order to deliver it to the prison. *Id.* at 62–63. Flading, who Talib referred to with others as "fat girl," PSR ¶ 30, and who had no prior record, pled guilty to Count One of the Indictment and was given probation.

Talib has never accepted responsibility for his conduct in this case. Indeed, he was given an upward adjustment of his guideline range for obstruction of justice during the prosecution by threatening other jail inmates to testify for him. PSR ¶¶ 28, 29. In his allocution to the court before sentence, he continued his lack of acceptance of that responsibility, even though the evidence against him had been overwhelming:

> THE COURT: All right. Mr. Talib, I'll be glad to hear anything you wish to argue.
>
> THE DEFENDANT: Yes, Your Honor. The Government's testimony I just heard, they really want me to get a life sentence. I, it doesn't matter what I'm sentenced to today. I know I'm coming back in front of you, guaranteed. I know I'm going to come back in front of you when they see the misconduct from the Government, from the actual conspiracy

> between the Government and the prison officials to get me indicted for a crime I still don't know, and society don't know what for. And I'm not going to sit here and beg you to give me the lower end of the guideline. Give me life, because I'm going to come back, guaranteed. I'm not going to sit here and -- the playing field is not level. They have not followed the rules. You know, of the criminal procedure, they haven't followed the law, and no one seems to want to hold anybody accountable. All the fingers want to point at me, but it's still five other fingers pointing back at them. What, whatever I'm saying, go ahead and give me life. I know I'll be back just like Arnold Schwarzenegger said.

Sent'g Tr. 51, ECF No. 429-1. None of Talib's accusations concerning government misconduct were valid and were simply his effort to escape the consequences of his life-long criminal conduct.

ENTER: August 9, 2022

/s/ JAMES P. JONES
Senior United States District Judge